THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* MAX ZAVIER, Defendant.

Court of Special Sessions of the City of New York Held by a City Magistrate, Gamblers' Court, Borough of Queens, May 13, 1947.

*Frank S. Hogan, District Attorney (S. Allen Early, Jr.,* of counsel), for plaintiff.

*Stephen A. Fuschino* for defendant.

CANUDO, M. Between the hours of 3:00 and 4:00 P.M. on March 24, 1947, the defendant was observed in the vicinity of his tailor shop at 189 Third Avenue, in the county and city of New York, by the arresting officer, who testified that during that time several men approached the defendant, consulted scratch sheets containing racing information, conversed briefly with the defendant, and handed him money in bill form. The officer testified that defendant, while engaging in these conversations, made notations on slips of paper and placed these slips in the right-hand pocket of his overcoat, together with the money handed him by these other men; and that upon being questioned by the officer as to his activities the defendant said: " Ain't I entitled to make a living? I only take these bets for a couple of hours a day."

When he placed the defendant under arrest the officer found five slips of paper and the sum of $26 in bills of various denominations in the right-hand pocket of his overcoat. One of these slips contained three vertical columns: In the first column were listed six consecutive days of the week beginning with Monday; in the second column, headed by the word " won ", appeared

six sets of numerals, each on a line with a day of the week, and in the third column, headed by the word " Lost ", appeared six similar sets of numerals. A police officer who testified as an expert in book-making activities described it as a " tally sheet " or " payoff slip " customarily used by professional book-makers, but admitted on cross-examination that this might also be the type of slip sometimes used by players to square accounts with a book-maker at the end of a week. The other slips contained writings in a foreign language and English numerals. The numerals were described by the book-making expert as representing possible bets on race horses.

Standing alone, the observations of the police officer would be insufficient to warrant the defendant's conviction as a bookmaker under section 986 of the Penal Law. Similarly, the alleged admissions made to the officer by the defendant, without additional proof that the crime charged had been committed, is inadequate to prove the defendant's guilt beyond a reasonable doubt (Code Crim. Pro., § 395), although it constitutes some evidence of the facts herein alleged.

The courts have consistently upheld convictions where there has been proof of writings tending to substantiate book-making activities, in addition to unheard conversations, examination of scratch sheets and passing of money (*People* v. *Panagoulokos*, 292 N. Y. 545; *People* v. *Picone*, 292 N. Y. 546). This court has serious doubt as to whether the so-called " tally sheet " or " payoff slip ", standing alone, may be considered such a writing, in view of the book-making expert's admission on cross-examination that such a slip might be used by a player as a record of his winnings and losses for a specific period of time.

Since the statute in question was intended to apply to the professional operator only (*People* v. *Goldstein*, 295 N. Y. 61), it therefore becomes important to examine the slips containing the foreign writings to determine whether they throw any light upon the defendant's status.

An official interpreter in the employ of this court, called as a witness for the People, testified that the first of these slips contained a word in Hebraic characters which, euphonically translated, appeared to be " *Ianegri* ". The People have shown that a horse named " *Janegri* " was scheduled to run on the day of the arrest. The interpreter was questioned as to whether there was a Hebraic character or combination of characters representing the sound of the letter " J " and said that there was.

The second slip was said by the interpreter to contain writings which, by euphonic translation, appeared in English as " *Tam*

*Betsi*". The People showed that a horse named " *Town Betty* " was scheduled to run on the day of the arrest.

The writing on the third slip was interpreted as " *Tam Ferris* ". The People showed that on the day in question a horse named " *Tom Ferris* " had been scheduled to run, but the defendant showed that, before one of the scratch sheets in common use by horse players and book-makers had gone to press, this horse had been withdrawn, and that this fact had been indicated on the scratch sheet.

The defendant contends that the foreign writing on these slips does not represent names of race horses, and that a reasonable doubt must therefore be entertained as to whether the defendant, on the occasion in question, was engaged in book-making activities.

To say that such variations in spelling as we find here — especially where a translation has to be made — are fatal to the People's case, would give every book-maker license to practice his illegal profession openly simply by varying one letter in the name of each horse on which he accepts bets. Or, carried to its ridiculous but logical extreme, the defendant's contention might put this court in the position of indicating that a police officer, who might overhear a bet being given, would necessarily have to hear the name of the horse pronounced correctly. Certainly, our lawmakers never contemplated, in enacting section 986 of the Penal Law or any other similar statute, that a man's incompetence or deliberate error in spelling or pronunciation should inure to his benefit and permit him to evade his responsibility before the law.

Without question the foreign writings on the slips found on the person of this defendant are the names of race horses scheduled to run on the day of his arrest, and the writings on those papers represent bets on those horses. These facts, combined with the other circumstances of the case, present convincing proof of the defendant's activities as a professional book-maker.

I therefore find the defendant guilty as charged.